UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| WARREN E. NORMAN,<br><br>　　　　Plaintiff,<br><br>　　　v.<br><br>JO ANNE B. BARNHART,<br>COMMISSIONER OF SOCIAL<br>SECURITY ADMINISTRATION,<br><br>　　　　Defendant. | No. SA CV 04-902-PLA<br><br>**MEMORANDUM OPINION AND ORDER** |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on July 30, 2004, seeking review of the Commissioner's denial of his applications for Disability Insurance Benefits and Supplemental Security Income payments. The parties filed a Consent to proceed before the undersigned Magistrate Judge on August 16, 2004. Pursuant to the Court's Order, the parties filed a Joint Stipulation on April 8, 2005, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## BACKGROUND

Plaintiff was born on April 2, 1968. [Administrative Record ("AR") at 48, 230.] He has completed high school. [AR at 231.] His previous work experience includes positions as an air conditioner installer, cement truck operator, head of security, maintenance worker, metal fabricator, pipe fitter, and sewage treatment plant operator. [AR at 57, 231-32.]

On January 29, 2002, and February 13, 2002, plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income payments, alleging that he had been unable to work since December 5, 2001, due to headaches, neck aches, upper and lower back problems, and right lower leg and knee problems. [AR at 48-50, 55-56, 213-15.] After his applications were denied initially and on reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). A hearing was held on October 28, 2003, at which plaintiff appeared with counsel and testified on his own behalf. [AR at 227-45.] On February 6, 2004, the ALJ determined that plaintiff was not disabled because he can perform the full range of light work. [AR at 12-22.] When the Appeals Council denied review on April 14, 2004, the ALJ's decision became the final decision of the Commissioner. [AR at 4-6.]

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well

as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1040-41 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.
## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

### A.   THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled

and the claim is denied. Id. The claimant has the burden of proving that he is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled, because he can perform other substantial gainful work available in the national economy. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, at step one, the ALJ concluded that plaintiff has not engaged in any substantial work activity since the alleged onset of his disability. [AR at 20.] At step two, the ALJ concluded that plaintiff has the severe impairments of: (1) lumbosacral sprain/strain with disc herniation at L5-S1 and bilateral lower extremity radiculopathy; (2) muscle tension headaches; and (3) right knee chondromalacia. [AR at 21.] At step three, the ALJ found that plaintiff's impairments do not meet or equal the requirements of any of the impairments in the Listings. [Id.] The ALJ further determined that plaintiff retains the residual functional capacity[1] to perform light work.[2] [Id.] At step four, the ALJ determined that plaintiff is unable to perform any of his past relevant work. [Id.] At step five, the ALJ concluded that based on plaintiff's residual functional capacity to perform the full range of light work, there are a substantial number of jobs in the national economy that he can perform. [Id.] Accordingly, the ALJ found plaintiff not disabled. [Id.]

---

[1] Residual functional capacity ("RFC") is what a claimant can still do despite existing exertional and nonexertional limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n. 5 (9th Cir. 1989).

[2] Light work is defined as work that involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b), 416.967(b).

# V.

## THE ALJ'S DECISION

Plaintiff contends that: (1) the ALJ failed to properly address his credibility; (2) the ALJ failed to properly consider the opinion of his treating physician, John B. Dorsey, M.D.; (3) the ALJ failed to properly resolve the medical evidence in finding a capacity for work at the light exertional level; (4) the ALJ failed to use the testimony of a vocational expert; and (5) new and material medical evidence shows that the ALJ's determination was against the weight of the evidence. Joint Stipulation ("Joint Stip.") at 3. Because the Court agrees with plaintiff that the ALJ failed to properly consider Dr. Dorsey's medical opinion, the Court reverses the ALJ's decision and remands for further proceedings.

Plaintiff asserts that based upon the objective findings and work restrictions determined by Dr. Dorsey, the ALJ should have concluded that plaintiff "is not capable of full-time work because he cannot sit or be on his feet sufficient to perform any work." Joint Stip. at 12. Moreover, according to plaintiff, the ALJ neither discussed the weight of, nor gave "specific reasons" for rejecting, Dr. Dorsey's opinion. Joint Stip. at 11.

Dr. Dorsey performed an orthopaedic evaluation of plaintiff on March 12, 2003, for workers' compensation purposes. [AR at 147-48.] The results of the examination show that plaintiff exhibited paravertebral muscle spasm, reduced range of motion in the lumbosacral spine, and positive straight-leg raising tests for both legs. [AR at 148-49.] Dr. Dorsey diagnosed plaintiff with lumbosacral sprain/strain with disc herniation at L5-S1, and bilateral lower extremity radiculopathy, and noted that a May 2, 2002, MRI study of plaintiff's lumbar spine indicated a 3.0 mm paracentral disc protrusion at L5-S1 that flattened the thecal sac and touched the traversing left S1 nerve root. [AR at 150.] Dr. Dorsey opined that "[plaintiff] will [likely] continue to experience episodes of increased pain requiring future medical treatment on an as-needed basis," such as medications, physical and/or chiropractic therapy, epidural steroid injections, facet blocks, and possible surgery. [AR at 150-51.] Based on the examination results, Dr. Dorsey concluded that plaintiff's condition

as of that date was permanent and stationary,[3] and precluded plaintiff from the "the performance of heavy lifting, repeated bending, stooping, twisting and turning, prolonged sitting and prolonged weightbearing." [AR at 151.] Dr. Dorsey also stated that, in his opinion, plaintiff could no longer work in his past job as an air conditioning technician. [AR at 151.]

On December 5, 2003, Dr. Richard Mulvania performed an "Initial Comprehensive Spine Consultation." [AR at 200-09.] Dr. Mulvania made the following objective findings: point tenderness at the L4-5 and L5-S1 levels; moderate tight sciatic notch tenderness; limited range of motion; positive straight leg raising for both legs; mildly positive sciatic stretch sign on the right; hypesthesia dorsum of the right foot; weakness of the right anterior tibialis and great toe extensor; and X-ray evidence of facet arthropathy. [AR at 207.] He diagnosed plaintiff with a herniated lumbar disc (at L5-S1) and facet arthropathy (probably at L4-5 and L5-S1). [AR at 207.] Dr. Mulvania did not render an opinion regarding plaintiff's disability status, and deferred this determination to the primary treating physician, i.e., Dr. Dorsey. [AR at 208.]

Subsequent to the hearing, Medical Expert Joselyn E. Bailey, M.D., reviewed plaintiff's medical records and noted that plaintiff had been diagnosed with sprain/strain of the cervical, thoracic and lumbar spine; thoracic radiculopathy and lumbar radiculopathy; muscle tension headaches; and right knee chondromalacia. [AR at 195.] Dr. Bailey also observed that an MRI of plaintiff's thoracic spine was negative, and that plaintiff was declared "permanent and stationary" on March 12, 2003.[4] [AR at 195.] Dr. Bailey filled out a "Physical Capacities Evaluation" and indicated that, out of an eight-hour day, plaintiff could sit for one hour at a time, stand for one hour at a time, and walk for one hour at a time. [AR at 196.] Dr. Bailey marked plaintiff's total sitting time as a maximum of eight hours, while the total time for standing and walking was, for each activity, six hours. [AR at 196.] Dr. Bailey also determined that plaintiff could frequently lift up to ten

---

[3] In workers' compensation parlance, a disability is deemed permanent and stationary when "the employee has reached maximal medical improvement, meaning his or her condition is well stabilized, and unlikely to change substantially in the next year with or without medical treatment." Cal.Code Regs. tit. 8, § 10152.

[4] It is not clear from the record whether Dr. Bailey was merely observing that other doctors had made the above diagnoses, or whether Dr. Bailey was concurring in these diagnoses.

1  pounds; occasionally lift up to 25 pounds; frequently bend and reach; occasionally squat, crawl,
2  and climb; and was totally restricted from work activities involving unprotected heights. [AR at
3  196.]
4       The ALJ assigned "great probative weight" to Dr. Bailey's opinion, and observed that "her
5  conclusions are not inconsistent with the great weight of the evidence, including Dr. Mulvania's
6  deference to Dr. John Dorsey in the matter of physical capacity." [AR at 17.] In so stating, the ALJ
7  highlighted the fact that Dr. Dorsey had precluded plaintiff from heavy lifting, repeated bending,
8  stooping, twisting and turning, prolonged sitting and weightbearing, as well as from working in his
9  past job as an air conditioning technician. [Id.] The ALJ went on to determine that plaintiff's RFC
10 was for light work involving lifting/carrying up to twenty pounds occasionally and up to ten pounds
11 frequently; standing or walking for one hour at a time for about six hours total during an eight hour
12 workday; occasional squatting, crawling and climbing; and no working around unprotected heights.
13 [AR at 21.] With respect to the above restrictions, the ALJ concluded that they "do not significantly
14 erode [plaintiff's] ability to perform light work." [Id.]
15      In evaluating medical opinions, the case law and regulations distinguish among three types
16 of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but
17 do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the
18 claimant (non-examining physicians). See 20 C.F.R. §§ 404.1502, 416.927; Lester, 81 F.3d at
19 830. As a general rule, more weight should be given to the opinion of a treating physician than
20 to the opinions of doctors who do not treat the plaintiff. Lester, 81 F.3d at 830; see also Smolen
21 v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996) ("Because treating physicians are employed to cure
22 and thus have a greater opportunity to know and observe the patient as an individual, their
23 opinions are given greater weight than the opinions of other physicians.").
24      "However, an ALJ need not give controlling weight to the opinion of a treating physician."
25 Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1194-95 (9th Cir. 2004). "The treating
26 physician's opinion is not ... necessarily conclusive as to ... the ultimate issue of disability."
27 Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citations omitted). "The ALJ may
28 disregard the treating physician's opinion whether or not that opinion is contradicted." Batson, 359

F.3d at 1159 (quoting Magallanes, 881 F.2d at 751).  Where the record contains conflicting medical evidence, the ALJ is charged with determining credibility and resolving the conflict. Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003).  When the treating physician's opinion is not uncontroverted, the ALJ may reject it by setting forth specific and legitimate reasons for doing so which are based on substantial evidence in the record.  Smolen, 80 F.3d at 1285.

As set forth above, in assessing plaintiff's RFC, the ALJ gave great weight to Dr. Bailey's expert opinion, which the ALJ described as "not inconsistent" with the opinion of treating physician Dr. Dorsey.  A comparison of the two opinions shows, however, that Dr. Dorsey expressly precluded "prolonged sitting and prolonged weightbearing," while Dr. Bailey did not assign any restrictions on sitting, and allowed plaintiff to stand for a total of six hours.[5]  Based on this discrepancy, discussed in further detail below, the ALJ's finding that the opinions were "not inconsistent" appears to be factually inaccurate.

Although the phrase "prolonged sitting and prolonged weightbearing" was used by Dr. Dorsey in his medical evaluation for plaintiff's workers' compensation case, the ALJ was required to evaluate this terminology like any other medical opinion.  See Booth v. Barnhart, 181 F.Supp.2d 1099, 1105 (C.D.Cal. Jan. 22, 2002); see also Coria v. Heckler, 750 F.2d 245, 247 (3rd Cir. 1984) ("the ALJ should evaluate the objective medical findings set forth in the medical reports for submission with the worker's compensation claim by the same standards that s/he uses to evaluate medical findings in reports made in the first instance for the Social Security claim"); Bosley v. Shalala, 879 F.Supp. 296, 304 (W.D.N.Y. March 9, 1995) ("the ALJ was not entitled to ... disregard, or neglect to articulate reasons for rejecting, either the opinions or the objective medical findings contained in" the treating doctor's report, even though the report was prepared for workers' compensation purposes). Accordingly, the ALJ must "'translate' [workers' compensation] terms of art" to correspond to Social Security terminology.  Booth, 181 F.Supp.2d

---

[5] In the "Physical Capacities Evaluation," Dr. Bailey circled that plaintiff could only sit for one hour at a time in an eight hour day, but then indicated that plaintiff could sit for a total of eight hours.  The Court notes that this appears to be an internal inconsistency, or at a minimum, an ambiguity, in Dr. Bailey's assessment of plaintiff.

at 1106. The translation need not be explicit, but "it should at least indicate that the ALJ recognized the differences between the relevant state workers' compensation terminology, on the one hand, and the relevant Social Security disability terminology, on the other hand, and took those differences into account in evaluating the medical evidence." Id.

Despite the fact that Dr. Dorsey did not define what he meant by his use of the term "prolonged sitting and prolonged weightbearing," this reference has been reasonably interpreted to mean sitting and standing for "at least half of the work day." See Booth, 181 F.Supp.2d at 1108 (stating "[i]t is logical to assume that [the treating doctor's] reference to 'prolonged' sitting means sitting at least half of the work day"). Assuming that interpretation is correct, Dr. Bailey's opinion -- as well as the ALJ's determination of plaintiff's functional capacity -- that plaintiff would be able to sit for eight hours and stand for six hours in an eight-hour workday contradicts Dr. Dorsey's findings. See id. (stating "it would be difficult to argue convincingly that sitting for six hours during an eight-hour day does not qualify as 'prolonged' sitting").

Here, the ALJ did not offer the requisite "translation," whether explicit or not, regarding Dr. Dorsey's opinion that plaintiff is precluded from "prolonged sitting and prolonged weightbearing." In turn, by giving weight to Dr. Bailey's opinion in determining that plaintiff had no sitting restriction and could stand and walk for six hours during the workday, the ALJ contradicted Dr. Dorsey's sitting and standing limitations. It appears from the ALJ's language, where he states that Dr. Bailey's and Dr. Dorsey's opinions are "not inconsistent," that this contradiction may have been inadvertent. In any event, whether intended or not, the ALJ's failure to take into account Dr. Dorsey's sitting and standing preclusion in effect resulted in an implicit rejection of that portion of Dr. Dorsey's opinion. See Smith v. Massanari, 139 F.Supp.2d 1128, 1133 (C.D.Cal. 2001) (reliance on one physician's opinion in making a finding, which differs from that of another physician, is an implicit rejection of the latter).

Because the ALJ did not interpret or discuss this conflict in the medical evidence, it follows that the ALJ did not provide any reasons, let alone specific and legitimate reasons, for rejecting the above mentioned portion of Dr. Dorsey's opinion in favor of the medical expert. See Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981) ("Since it is apparent that the ALJ cannot reject

9

evidence for no reason or the wrong reason [citation omitted], an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper."); see also Reddick v. Chater, 157 F.3d 715, 725 (ALJ can meet the requisite specific and legitimate standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings").

The Court also notes that the ALJ rejected petitioner's contention that he is not capable of performing light or sedentary work,[6] and based the rejection on "the conclusions of Dr. John Dorsey that he should not do heavy lifting, repeated bending, stooping, twisting and turning, prolonged sitting, and prolonged weightbearing." [AR at 18.] Rather, the ALJ states, plaintiff is capable of performing "the demands of the full range of light work." [AR at 20.]

According to the Regulations, a job in the light work category may require "a good deal of walking or standing," and could involve "sitting most of the time" with some pushing and pulling of leg or arm controls. 20 C.F.R. §§ 404.1567(b), 416.967(b). When an applicant can do light work, it is assumed that he can also do sedentary work, "unless there are additional limiting factors such as ... inability to sit for long periods of time." Id.

In turn, a sedentary job is defined "as one which involves sitting, [although] a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 404.1567(a), 416.967(a). Social Security Ruling 96-9p[7] explains that sedentary jobs generally require no more than two hours of walking and standing in an eight-hour workday, while sitting would generally be required for six hours. "[T]he Commissioner has expressly stated that a person

---

[6] Sedentary work is defined as work that involves "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. §§ 404.1567(a), 416.967(a).

[7] Social Security Rulings do not have the force of law. Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

who is unable to sit for prolonged periods of time is incapable of engaging in the full range of sedentary work." Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001).

As explained above, the term "prolonged" is reasonably interpreted to mean half of the workday. See Booth, 181 F.Supp.2d at 1108. Sedentary jobs, however, generally involve sitting for six hours out of the workday, while light work jobs may involve "sitting most of the time" when the pushing and pulling of arm or leg controls is required. Moreover, based on Dr. Dorsey's restriction against "prolonged weightbearing," light work jobs may also be problematic to the extent they require "a good deal" of standing or walking. The ALJ's reliance on Dr. Dorsey's opinion for the proposition that plaintiff can perform the full range of light work, which includes sedentary work, is therefore erroneous. The ALJ did not provide, as required, sufficient reasons explaining why the entirety of Dr. Dorsey's opinion was not taken into account.

The Court is persuaded that the ALJ did not provide specific and legitimate reasons supported by substantial evidence as to why Dr. Dorsey's opinion regarding the restriction on prolonged sitting and weightbearing was rejected. See Magallanes, 881 F.2d at 751; see 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (Commissioner will "always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."). Accordingly, remand on this issue is appropriate.

The Court also notes that, upon remand, in the event plaintiff's RFC is reconsidered in light of Dr. Dorsey's opinion, and plaintiff is found to be unable to sit or stand for prolonged periods of time, the ALJ should consider whether the assistance of a vocational expert would be necessary to determine whether there are a significant number of jobs in the national economy that plaintiff can perform. See Auckland v. Massanari, 257 F.3d 1033, 1037 (9th Cir. 2001) ("Unless discredited, a medical opinion regarding [plaintiff's] inability to sit or stand for prolonged periods would require the assistance of a vocational expert in deciding whether there are a significant number of jobs in the national economy that [plaintiff] can do since most sedentary jobs require sitting for most or all of the day."), citing Tackett v. Apfel, 180 F.3d 1094, 1103 (9th Cir. 1999).

Furthermore, upon remand, the ALJ should also determine if plaintiff's belatedly submitted medical evidence regarding his candidacy for back surgery is material, and therefore warrants

consideration. See Embrey v. Bowen, 849 F.2d 418, 423-24 (9th Cir. 1988) (new evidence may be considered that is material, and where good cause exists for the failure to incorporate the evidence into the record of the prior proceeding).

## VI.

## REMAND FOR FURTHER PROCEEDINGS

The ALJ's failure to properly consider the opinion of Dr. Dorsey requires that the decision to deny benefits be reversed. As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision. See Harman v. Apfel, 211 F. 3d 1172, 1179 (9th Cir.), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). In this case, remand is appropriate to: (1) evaluate and weigh Dr. Dorsey's restriction on prolonged sitting and prolonged weightbearing; (2) if Dr. Dorsey's opinion is not discredited, reconsider plaintiff's RFC in light of the above sitting and weightbearing restriction; (3) in the event a restriction on prolonged sitting and weightbearing is found by the ALJ, determine whether a vocational expert is needed to evaluate whether a significant number of jobs exist in the national economy that plaintiff can perform; and (4) determine whether plaintiff's new medical evidence is material and warrants consideration.[8] The ALJ is directed to take whatever further action is deemed appropriate and consistent with this decision.

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **GRANTED**; (2) the decision of the Commissioner is **REVERSED**; and (3) this action is **REMANDED** to defendant for further proceedings consistent with this Memorandum Opinion.

/
/
/
/

---

[8] In light of the Court's remand order, the Court does not address plaintiff's remaining contentions of error.

1   **IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the
2   Judgment herein on all parties or their counsel.
3
4   DATED: January 25, 2006                              /S/
                                                  PAUL L. ABRAMS
5                                          UNITED STATES MAGISTRATE JUDGE
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28